AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

FILED

JAN - 2 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

|  |  |
|---|---|
| In the Matter of the Search of<br><br>Information associated with ▮▮▮▮, that is stored at premises<br>controlled by Cellco Partnership D/B/A Verizon Wireless. | )<br>)<br>)<br>)<br>)<br>) | Case No.   4:18 MJ 6004 PLC |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____ District of _____ NEW JERSEY
*(identify the person or describe the property to be searched and give its location)*:

Information associated with ▮▮▮▮ that is stored at premises owned, maintained, controlled, or operated by CELLCO
PARTNERSHIP D/B/A VERIZON WIRELESS, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, NJ
07921.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

As set forth in Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before        January 16, 2018        *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to      United States Magistrate Judge Patricia L. Cohen      .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      1/2/18   4:15 P.M.      _____
                                                                         *Judge's signature*

City and state:      St. Louis, MO      Honorable Patricia L. Cohen, U.S. Magistrate Judge
                                                              *Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with ▮▮▮▮▮▮▮ that is stored at premises owned, maintained, controlled, or operated by **Cellco Partnership, D/B/A Verizon Wireless**, a wireless provider headquartered at **180 Washington Valley Road, Bedminster, NJ 07921,** Phone: (800)451-5242, Fax: (888)667-0028.

1

**ATTACHMENT B**

**Particular Things to be Seized**

## I. Information to be disclosed by CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS

To the extent that the information described in Attachment A is within the possession, custody, or control of CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, including any messages, records, files, logs, or information that have been deleted but are still available to CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

b.      All existing printouts from original storage of all of the text messages described above;

c.      All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from September 15, 2017 to present;

d.      All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

e.      All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device

1

Case: 4:18-cr-00975-PLC Doc. #: 1-3 Filed: 08/02/18 Page: 4 of 13 PageID #: 22
Case: 4:18-cr-00975-PLC Doc. #: 1-3 Filed: 08/02/18 Page: 12 of 13 PageID #: 226
PageID #: 97

associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

f.     Detailed billing records, showing all billable calls including outgoing digits, from September 15, 2017 to present;

g.     All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from September 15, 2017 to present;

h.     Incoming and outgoing telephone numbers, from September 15, 2017 to present;

i.     All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

j.     All records pertaining to communications between CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS and any person regarding the account or identifier, including contacts with support services and records of actions taken.

## II.  Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of inter alia, 18 U.S.C. §§ 241 and 242 involving Dustin Boone and still-unidentified SLMPD officers involved in the arrest or detention of Luther Hall and other individuals, involved in the protests in downtown St. Louis, since September 15, 2017, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.     Any and all records related to the arrest and detention and/or assault of Luther Hall or other individuals involved in the protests; any and all records related to the arrest and detention of individuals involved in the protests in downtown St, Louis, any records of communication between Boone and Hall and other SLMPD officers; any and all communications with any individuals related to the aftermath and/or investigation into the arrest and detention of Luther Hall and other individuals during the protests in downtown St. Louis, and any

photographs related to the protests and/or arrests and detention of individuals involved in the protests in downtown St. Louis.

   b.      Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

   c.      Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

   d.      Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

   e.      The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).

## **CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, and my official title is _____. I am a custodian of records for CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

    a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

    b.     such records were kept in the ordinary course of a regularly conducted business activity of ATT MOBILITY; and

    c.     such records were made by CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____    _____

Date                         Signature

AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

FILED

JAN ~ 2 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

In the Matter of the Search of

Information associated with ███████, that is stored at premises controlled by Cellco Partnership D/B/A Verizon Wireless

)
)
)
)
)
)

Case No.     4:18 MJ 6004 PLC

## APPLICATION FOR A SEARCH WARRANT

I,   Special Agent Darren Boehlje  , a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

Information associated with ███████ that is stored at premises owned, maintained, controlled, or operated by CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

located in the _____ District of ___ NEW JERSEY ___ , there is now concealed

As set forth in Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC § 242 | Deprivation of Rights Under Color of Law |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Darren Boehlje, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   1/2/18

_____
*Judge's signature*

City and state:   St. Louis, MO

Honorable Patricia L. Cohen, U.S. Magistrate Judge
*Printed name and title*

AUSA:   Reginald L. Harris

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

IN THE MATTER OF THE SEARCH OF

No. 4:18 MJ 6004 PLC

Information associated with       ,
that is stored at premises controlled by **Cellco**    **Filed Under Seal**
**Partnership D/B/A Verizon Wireless**.

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Darren Boehlje, being first duly sworn, hereby depose and state as

follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for

information associated with certain accounts that is stored at premises owned, maintained,

controlled, or operated by **CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS**, a

wireless provider headquartered at **180 Washington Valley Road, Bedminster, NJ 07921**. The

information to be searched is described in the following paragraphs and in Attachment A. This

affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a),

2703(b)(1)(A) and 2703(c)(1)(A) to require Cellco Partnership D/B/A Verizon Wireless to

disclose to the government records and other information in its possession pertaining to the

subscriber or customer associated with the accounts, including the contents of communications.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have

been so employed since 2011. I am presently assigned to the St. Louis Division of the FBI. My

responsibilities include the investigation of federal crimes to include violations of Title 18

United States Code (U.S.C.) § 242 (Deprivation of Rights). I am currently assigned to investigate

allegations of unreasonable force under color of law. I received over twenty-one weeks of

specialized law enforcement training at the FBI Academy in Quantico, Virginia. My experience

obtained as a Special Agent of the FBI has included investigations of multiple violations of

federal criminal civil rights laws. I know cellular telephones are commonly used by law

enforcement officers to communicate about arrests they have just made. Cellular telephones are

also used by officers suspected of using unreasonable or excessive force to communicate with

one another, attempting to justify their actions or keep their actions hidden. Likewise, cellular

phones are often used by such subjects to brag about or apologize for their actions. These

cellular telephones and their respective cellular telephone service providers possess the

capability to store and transmit data thereby aiding in determining the general location of a

cellular telephone.

     3.    The facts in this affidavit come from my personal observations, my training and

experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set

forth all of my knowledge about this matter.

     4.    Based on my training and experience and the facts as set forth in this affidavit,

there is probable cause to believe that violations of inter alia, 18 U.S.C. §§ 241 (Conspiracy

Against Rights) and 242 (Deprivation of Rights) have been committed by Dustin Boone, a police

officer with the St. Louis Metropolitan Police Department ("SLMPD") as well as other still-to-

be-identified SLMPD officers. There is also probable cause to search the information described

in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as

described in Attachment B.

**PROBABLE CAUSE**

5.    Following the acquittal of former SLMPD Officer Jason Stockley on a murder

charge stemming from an officer-involved shooting on September 15, 2017, there were multiple

days of concentrated protesting in and around St. Louis.  SLMPD Officer Luther Hall, an

African-American, 22-year veteran of the police department, was assigned to attend the protests

and work in an undercover capacity, documenting protest activity and property destruction. After

working for two days at the protests, Hall returned to his assignment at approximately 7:00 PM

on September 17, 2017, to record protest activity. Hall and his partner, who was also undercover,

were together until just after 8:00 PM, when they ran in separate directions after unidentified

SLMPD officers fired numerous rounds of pepper balls, mace, and bean bag rounds into the

crowd from their vehicles.  Hall never heard an order to disperse prior to SLMPD's deployment

of these devices.

6.    While Hall was at an intersection, SLMPD SUVs pulled up and officers in tactical

gear got out.  A female officer told Hall to get to the ground.  Hall raised his hands in surrender,

his camera (a Nikon DSLR) in his left hand and his cell phone in his right hand, actively

recording.  Hall was wearing a shirt that he wore specifically for this undercover activity, short

and tight enough to show his weapon-less waistband when he raised his arms.  As he was

complying and getting to his knees, Hall felt himself being picked up from behind and then

slammed to the ground face first.  He was again picked up and slammed to the ground face first.

As a result, Hall's face felt sticky and warm, which later turned out to be blood gushing from his

nose and lip.  While on the ground, officers repeatedly punched Hall with closed fists, hit him

with sticks, and kicked him while wearing boots.  Hall's hands were out in front of him on the

3

ground.  Although the officers were telling him to put his hands behind his back, he was unable to comply because officers were standing on his arms.  Hall described it as a "free for all."

7.      SLMPD officers ultimately placed Hall's hands behind his back, handcuffed him, and sat him up on the pavement next to a black male in custody who had an abrasion on his face and was wearing a Patriots shirt.  While seated on the pavement, Hall felt pain in his back and neck and could see his nose was bleeding.  In order to relieve some of his back pain, Hall leaned back, but each time he did so, the officer standing behind him, whom Hall possibly identified as Officer Randy Hayes, "checked" Hall in the back with his knee and shin-guard, telling him to "stop fucking moving."

8.      An officer then removed the camera hanging around Hall's neck, removed the battery from the camera, and threw the camera onto the pavement, breaking it.  Hall believes the officer removed the battery thinking the battery was the memory card.  Hall also saw his cell phone on the ground with a circular imprint on the shattered screen.  Hall believes the imprint was made by an officer's baton.

9.      Hall did not want to reveal his true identity and instead looked around for someone he knew for help.  He made eye contact with Civil Disobedience Team ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮, with whom he was familiar. ▮▮▮▮▮▮▮ enlisted the assistance of two SLMPD SWAT officers who then picked up Hall and took him to an SLMPD Bear vehicle, where Hall was provided medical treatment. ▮▮▮▮▮▮▮▮▮▮▮▮ arrived and arranged for Hall to be transported from the scene in a police vehicle, as if he were being arrested in order to maintain Hall's undercover status.  Hall was transported to SLMPD Headquarters where he reported to ▮▮▮▮▮▮▮▮ that the officers "beat the fuck out of him like Rodney King."

4

Hall then went to a temporary medical facility that the Missouri State Highway Patrol ("MSHP") had staged for police officers so that he could receive additional treatment.

10.     Hall suffered significant injuries as a result of the assault. At the MSHP facility, he received three layers of stiches on his lip where there was an approximately one centimeter hole. He has since been diagnosed with multiple herniated discs. An injury to his jaw made it difficult for him to eat, and he subsequently lost approximately 15 pounds. He also recently had gallbladder surgery, which, according to Hall's doctors, may have been precipitated by the stress of the assault.

11.     Hall identified four officers as having been at the scene of his assault: Officers Chris Myers, Bailey Coletta, Randy Hayes, and Dustin Boone, the officer whose cellular phone number is the subject of this affidavit.

12.     On Sunday, September 25, 2017, at 9:04 a.m., Hall received a text message from the phone number _____, the cellular number that is the subject of this affidavit. Hall provided a copy of the text message to federal authorities. The message states the following:

"Luther, this is Dustin Boone. I am sure you know by now that I was involved in the incident last Sunday downtown. I have attempted to reach out to you through a few different commanders and I have been told to hold off. I have not heard much from anyone in regard to you receiving the message I wanted to be conveyed to you so I decided to text you myself today. I feel like an apology will never be enough but I would really like to speak to you in person so I can apologize face to face as a man and not through a text message. I completely understand if you are not willing to meet with me and if that is the case, I would ask if you are willing to accept a phone call from me once you are healthy and feel the timing is right. Again, I would

5

much rather tell you I am sorry while standing in front of you than over the telephone, but understand your side of all of this as well. Please let me know and if you are willing I will be available at any point in time. I hope you are healing both physically and mentally. I can't imagine what you have gone through this past week. I hope you will allow me the opportunity to tell you I am sorry in person, it won't make it right but I feel it is the least I can do. I hope to talk to you soon Luther. Get well."

## **TECHNICAL BACKGROUND**

13.     In my training and experience, I have learned that Cellco Partnership D/B/A Verizon Wireless is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and unretrieved voicemail, text, and multimedia messages for Cellco Partnership D/B/A Verizon Wireless subscribers may be located on the computers of Cellco Partnership D/B/A Verizon Wireless. Further, I am aware that computers located at Cellco Partnership D/B/A Verizon Wireless contain information and other stored electronic communications belonging to unrelated third parties.

14.     Wireless phone providers often provide their subscribers with voicemail services. In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail. If the subscriber does not delete the message, the message may remain in the system of Cellco Partnership D/B/A Verizon Wireless for weeks or months.

15.     Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or

"Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by Cellco Partnership D/B/A Verizon Wireless for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

16. Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

17. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile

7

Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

18.    Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

19.    Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates, times and sometimes, places, of payments and the means and source of payment (including any credit card or bank account number).

20.    In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such

8

communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user, as a result of the communications.

21.     As explained below, information stored at the wireless provider, including that described above, may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the data pertaining to a particular cellular device that is retained by a wireless provider can indicate who has used or controlled the cellular device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, data collected at the time of account sign-up, information relating to account payments, and communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled a cellular device at a relevant time. Further, such stored electronic data can show how and when the cellular device and associated cellular service were accessed or used. Such "timeline" information allows investigators to understand the chronological context of cellular device usage, account access, and events relating to the crime under investigation. This "timeline" information may tend to either inculpate or exculpate the cellular device owner. Additionally, information stored by the wireless provider may indicate the geographic location of the cellular device and user at a particular time (e.g., historic cell-site location information; location integrated into an image or video sent via text message to include both metadata and the physical location displayed in an image or video). Last, stored electronic data may provide relevant insight into the state of mind of the cellular device's owner and/or user as it relates to the offense under investigation. For

9

example, information relating to the cellular device in the possession of the wireless provider may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

22.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Cellco Partnership D/B/A Verizon Wireless to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## **CONCLUSION**

23.     Based on the forgoing, I request that the Court issue the proposed search warrant.

24.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

25.     A preservation request was sent to and accepted by **CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS** for **Dustin Boone** and cellular phone number ▇▇▇▇▇▇ on December 21, 2017.

26.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

27.     The foregoing has been reviewed by Reginald Harris, Executive Assistant United States Attorney, U.S. Attorney's Office, Eastern District of Missouri and Fara Gold, Special Litigation Counsel, Criminal Section, Civil Rights Division, U.S. Department of Justice.

## REQUEST FOR SEALING

28.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

_____
DARREN BOEHLJE
Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me this 2nd day of January, 2018.

_____
PATRICIA L. COHEN
United States Magistrate Court Judge
Eastern District of Missouri

11

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with ▮▮▮▮▮▮▮ that is stored at premises owned, maintained, controlled, or operated by **Cellco Partnership, D/B/A Verizon Wireless**, a wireless provider headquartered at **180 Washington Valley Road, Bedminster, NJ 07921**, Phone: (800)451-5242, Fax: (888)667-0028.

**ATTACHMENT B**

**Particular Things to be Seized**

## I. Information to be disclosed by CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS

To the extent that the information described in Attachment A is within the possession, custody, or control of CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, including any messages, records, files, logs, or information that have been deleted but are still available to CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a. All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

b. All existing printouts from original storage of all of the text messages described above;

c. All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from September 15, 2017 to present;

d. All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

e. All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device

associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

 f. Detailed billing records, showing all billable calls including outgoing digits, from September 15, 2017 to present;

 g. All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from September 15, 2017 to present;

 h. Incoming and outgoing telephone numbers, from September 15, 2017 to present;

 i. All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

 j. All records pertaining to communications between CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS and any person regarding the account or identifier, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

 All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of inter alia, 18 U.S.C. §§ 241 and 242 involving Dustin Boone and still-unidentified SLMPD officers involved in the arrest or detention of Luther Hall and other individuals, involved in the protests in downtown St. Louis, since September 15, 2017, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

 a. Any and all records related to the arrest and detention and/or assault of Luther Hall or other individuals involved in the protests; any and all records related to the arrest and detention of individuals involved in the protests in downtown St, Louis, any records of communication between Boone and Hall and other SLMPD officers; any and all communications with any individuals related to the aftermath and/or investigation into the arrest and detention of Luther Hall and other individuals during the protests in downtown St. Louis, and any

photographs related to the protests and/or arrests and detention of individuals involved in the protests in downtown St. Louis.

b.     Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

c.     Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

d.     Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

e.     The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).

3